**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SAN JUANITA AGUIRRE,<br>　　　　　Debtor. | BAP No. CC-25-1185-SNL |
| R. GRACE RODRIGUEZ,<br>　　　　　Appellant,<br>v.<br>SAN JUANITA AGUIRRE; U.S.<br>TRUSTEE; ELIZABETH F. ROJAS,<br>Chapter 13 Trustee,<br>　　　　　Appellees. | Bk. No. 9:25-bk-10130-RC<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Ronald A. Clifford III, Bankruptcy Judge, Presiding

Before: SPRAKER, NIEMANN, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

In May 2025, the bankruptcy court issued an order to show cause

why it should not sanction appellant R. Grace Rodriguez $25,000 under

Rule 9011(c).[1] As the order to show cause described, Rodriguez allegedly

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules

prepared and filed a bankruptcy petition, schedules, and statement of financial affairs on behalf of debtor San Juanita Aguirre without giving debtor the opportunity to review and approve the papers before filing. Instead, Rodrguez allegedly cut and pasted debtor's signatures onto the filings from a blank piece of paper debtor previously signed at Rodriguez's request.

The order to show cause directed Rodriguez to file a written response and gave her over thirty days to do so. It further directed her to file a reply to any responses filed by other interested parties, including debtor, the United States Trustee, and the Chapter 13 trustee. But Rodriguez chose not to respond in writing to the order as directed. She opted to appear at the hearing—not to challenge the basis for the show cause order but to express remorse for her conduct and to request that the court consider suspending her in lieu of ordering her to pay the $25,000 the court had identified as a potential sanction. The court largely accepted Rodriguez's position. It imposed only $2,500 in monetary sanctions but also suspended her from practice before the bankruptcy court, as Rodriguez had asked the court to consider. The bankruptcy court suspended her for six months and imposed conditions for her reinstatement.

On appeal, Rodriguez does not challenge the $2,500 in monetary sanctions. Nor does she dispute the court's authority under Rule 9011(c) to

of Bankruptcy Procedure, and all "Local Rule" references are to the Local Bankruptcy Rules for the Central District of California.

impose the sanctions and other terms set forth in its sanctions order. Instead, she contends that the court should have given her advance notice that it was considering suspending her—even though that was precisely the type of sanction she asked the court to consider. She also challenges the reinstatement procedures imposed and claims that the court should have held an evidentiary hearing despite the fact that she failed to timely contest the show cause order.

This appeal lacks merit. Accordingly, we AFFIRM.

## FACTS[2]

### A. The two competing bankruptcies and the February show cause order.

In early February 2025, two separate chapter 13 bankruptcies were filed—both supposedly on behalf of debtor—within 24 hours of each other. The first bankruptcy was filed by Rodriguez ("First Bankruptcy"). The second one was filed by a different attorney—Leonard Pena ("Second Bankruptcy").

Within hours of the competing bankruptcy filings, the court issued an order to show cause in both cases ("February Show Cause Order"). The order directed debtor to respond and explain why one or both cases should not be dismissed. Debtor responded that she did not oppose the dismissal

---

[2] We exercise our discretion, when appropriate, to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

of the First Bankruptcy but expressed the concern that the dismissal might negatively affect her Second Bankruptcy or other bankruptcies she might file in the future. According to debtor, she "did not authorize the filing of [the First Bankruptcy] nor were the Petition, Schedules and Statements of Financial Affairs review[ed], signed, or filed by her."

In her accompanying declaration, debtor explained that in December 2024 she contacted Rodriguez because one of her creditors was seeking to foreclose on her residence. The attorney told debtor she could help save debtor's home by filing a chapter 13 bankruptcy. They met at debtor's home that same month so Rodriguez could explain the chapter 13 process and to discuss debtor's finances. Debtor also gave Rodriguez her original 2022 and 2023 tax returns as well as proof of her income. In addition, "Rodriguez asked me to sign my name 5 times on a blank piece of paper which I did. I asked her what was the point of me signing 5 times on a blank piece of paper and she said 'I know why I need them.'" As debtor further recalled, "[o]ther than the signing the blank piece of paper I never signed any other documents." According to debtor, Rodriguez stated that she had collected everything needed to file the bankruptcy and would file the bankruptcy petition on behalf of debtor within a matter of days.

Notwithstanding debtor's understanding, January 2025 passed without any bankruptcy filing. As debtor recounts, despite her multiple attempts to reach Rodriguez by phone, she did not reconnect with Rodriguez until January 29, 2025. Rodriguez then told debtor the case

4

would be filed on February 1, 2025. Because of the delay, however, debtor lost confidence in Rodriguez and decided to hire a new attorney to file her bankruptcy case. By February 2, 2025, she met with Pena, who presented to her—and had her sign—the petition and other papers he needed to file to commence her chapter 13 case. Debtor also took a credit counseling class as directed by Pena. In turn, she asked Pena to file the bankruptcy and to demand return of the $2,500 she already had paid to Rodriguez.

On February 3, 2025, debtor learned from Pena that Rodriguez also had filed a chapter 13 case in debtor's name. Pena showed debtor the papers Rodriguez had filed and debtor purportedly had signed. Debtor denied that she had signed any of these documents and further stated, "I never authorized her to sign my signature."

At the initial hearing on the February Show Cause Order, the court referenced debtor's description of events as contained in her declaration and asked Rodriguez for her version of the salient facts. She did not deny that she signed the petition and related papers she filed for debtor. Nor did she dispute or explain the lapse of time between her December 2024 meeting with debtor and her filing of the petition in February 2025. Instead, she stated that she was "in the process of uploading" the petition (apparently on February 2, 2025) when she received a phone call from debtor asking her to notify debtor when the filing had been completed. According to Rodriguez, she completed the filing of the First Bankruptcy later that afternoon, but later heard from Pena that debtor did not want to

"go forward" with Rodriguez—that debtor instead wanted to move forward with Pena.

The court then asked Rodriguez whether debtor actually signed the petition or whether she signed blank sheets of paper. Rodriguez responded:

> [Debtor] signed a blank voluntary petition that we were filling in for her by hand, and then we have the hand one that she signed, but then we had it printed up and then we were going to sign for her as her power of attorney.

> So, I have a wet signature from her for the petition and the schedules that we prepared but not—they weren't filled out at the time that she did it, and I realize that that's not the best way to do it. I was trying to do her a favor because of her situation of not being able to electronically process documents, and she was also a caretaker for her son who's permanently disabled and can't be left alone.

In turn, Pena reiterated at the hearing that debtor did not sign any of the papers filed in the First Bankruptcy.

The court continued the hearing to May 20, 2025, so that it could consider how the matter should proceed. As the court described it, there were two principal issues it needed to ponder: (1) what sort of proceedings involving Rodriguez should follow if it turned out debtor had not authorized Rodriguez to file the petition; and (2) how the First Bankruptcy should be disposed of if debtor did not authorize it. The court did not ask anyone to submit any additional papers. Instead, the court indicated that it simply needed to review what already had been filed and think about what

6

should happen next.

**B.    Rodriguez's declaration and the second show cause order.**

Though the court did not require or authorize her to do so, on May 17, 2025, Rodriguez filed a declaration elaborating on her view of the circumstances surrounding the commencement of the First Bankruptcy. In relevant part, she claimed that after returning to her office and inputting the necessary information into debtor's bankruptcy petition and schedules, she called debtor to confirm that the information was correct and reviewed the contents of the filings with debtor to confirm their accuracy. According to Rodriguez, debtor gave verbal approval for Rodriguez to file the documents.

According to Rodriguez, in addition to verbal approval, debtor had signed and given her "a written authorization explicitly granting me power of attorney" permitting her to sign the petition for debtor "under penalty of perjury." Rodriguez attached to her declaration as Exhibit B what she described as a copy of this written authorization. Exhibit B consisted of a single page of paper. On the bottom two thirds of this paper are five signatures, which everyone seems to agree are copies of the five signatures that debtor made at Rodriguez's request. On the upper third of Exhibit B is the following handwritten language:

> I, San Juanita Aguirre, here by [sic] declare that I authorize my attorney, R. Grace Rodriguez to sign my bankruptcy attorney [sic] as my agent [i]n fact with full power of attorney to facilitate the filing of my bankruptcy. I have given 5 [s]ignatures to be used on my

7

bankruptcy — I am aware of the contents of my petition[.]

On May 20, 2025, the bankruptcy court held a continued hearing on the February Show Cause Order. The court indicated that it was inclined to eventually expunge the First Bankruptcy. However, before that could occur, the court stated it needed to further address Rodriguez's alleged conduct by initiating sanctions proceedings against her under Rule 9011. The court indicated that it was prepared to issue a new order to show cause, pursuant to which Rodriguez would be given the opportunity to respond and explain why monetary sanctions of $25,000 should not be imposed against her ("May Show Cause Order"). The court stated that its order would also provide for responses to be filed by debtor, the United States Trustee, and the chapter 13 trustee, so that those parties could help develop an appropriate record given the gravity of the proceedings.

Rodriguez pointed out that she had filed her declaration a few days before the hearing and reiterated some of its contents. She further noted that, because debtor could not read English, it would make sense that debtor would not know whether she saw the bankruptcy papers Rodriguez was preparing for her. Rodriguez emphasized that she had to read and translate the papers to debtor.

The court initially indicated that it would set a hearing on the May Show Cause Order for a date in June, but Rodriguez explained that this would not give her sufficient time to respond. She indicated that she might need to hire her own attorney, conduct discovery, and draft a formal

written response to the new show cause order given the seriousness of the sanctions. She also opined that any disciplinary proceedings held against her should include the filing of a formal complaint and a trial on the merits. The court disagreed with Rodriguez's proposed procedures. The court explained that the sanctions proceedings would be initiated by the entry of the new order to show cause, which would give her all the information she would need to respond. The court then stated that it would set the matter for hearing on July 15, 2025.

The court entered the May Show Cause Order on May 23, 2025. After recounting debtor's factual assertions, the order referenced Rule 9011, Local Rule 9011-3(a),[3] and related case law. The order directed Rodriguez to file and serve a written response by June 24, 2025 explaining why she should not be sanctioned in the amount of $25,000. The order also directed the chapter 13 trustee, Pena, and the Office of the United States Trustee to file and serve written responses by July 1, 2025. Finally, the order required Rodriguez to file and serve a reply to the other parties' written responses by July 8, 2025.

---

[3] This Local Rule provides in relevant part:

> (a) Violation of Rules. The violation of, or failure to conform to, the FRBP or these rules may subject the offending party or counsel to penalties, including monetary sanctions, the imposition of costs and attorneys' fees payable to opposing counsel, and/or dismissal of the case or proceeding.

## C. Responses to and hearing on the May Show Cause Order.

Rodriguez did not file any written response. But Pena, the chapter 13 trustee, and the United States Trustee each filed a response. As relevant here, Pena said that what initially appeared to be negligence on Rodriguez's part had morphed into fraud on the court. As Pena reasoned, the so-called power of attorney attached to Rodriguez's May declaration was forged. Pena further pointed out that even if the power of attorney had been genuine and authentic (which it was not), it was legally defective and insufficient under California law. Pena's response was supported by a new declaration from debtor. She testified that the only paper she signed was a blank piece of paper, which she signed five times at Rodriguez's request. She further stated that "[t]he 'power of attorney' language was not on the page when I signed 5 times." She also reiterated that the first time she saw any of the documents filed by Rodriguez was when Pena showed them to her after they were filed.

Rodriguez did not file a reply to any of the other parties' responses. Despite her failure to submit any of the papers directed by the May Show Cause Order, the court gave Rodriguez the opportunity to verbally comment at the July 15, 2025 hearing. The court initiated a colloquy with her by expressing its grave concern regarding the circumstances surrounding the First Bankruptcy and Rodriguez's submission of the allegedly-forged power of attorney. The court additionally noted that it had not received from Rodriguez any written response to any of the

10

allegations regarding her alleged conduct, so it assumed there was no response to be had.

In response to the court's concerns, Rodriguez expressed regret and contrition for her decision to file the bankruptcy paperwork for debtor. Without going into specifics, she admitted it was "wrong" and that there was no excuse or justification for what she did. On the other hand, she seemed to attribute her admittedly ill-advised decision to file the First Bankruptcy to debtor's phone calls and voice mails urging her to file the bankruptcy without further delay. Rodriguez further explained that she made an affirmative decision not to respond to the May Show Cause Order in part because she realized, "at the end of the day there's no excuse for what [I] did. There is none."

With respect to the power of attorney, Rodriguez disputed debtor's version of events. She claimed that the power of attorney language was on the piece of paper debtor signed at the time she signed it. Rodriguez further claimed that she read to debtor what the language said in Spanish and explained to her that it authorized her (Rodriguez) to sign the bankruptcy paperwork for debtor.

Of course, Rodriguez presented all of this as argument at the hearing. None of it was offered as testimony. Nor did Rodriguez contend that she had insufficient time or opportunity to respond or that an evidentiary hearing was necessary to develop the record. Instead, she merely stated that she was prepared to accept the consequences of her actions. But she

11

did request the court to consider suspending her from practicing before the bankruptcy court as an alternative to imposing $25,000 in sanctions. She expressed the fear that she would lose her license to practice law in California if the court sanctioned her $25,000. According to her, this in turn would lead to other clients—who she was representing on a pro-bono or low-fee basis—to lose the advice and assistance of counsel because there was no one else in the locality willing to provide the necessary legal services for little or no fees. As she put it:

> And, so, your Honor, I would ask the Court to consider the imposition of a different sanction, that perhaps suspend [sic] me from the practice in the bankruptcy court as a disciplinary measure for an appropriate time that you feel is appropriate to punish me for what I've done, and I agree, I should be punished. But, your Honor, I ask you not to punish everyone else because of it. That's the only reason I would ask the Court to reconsider a financial sanction because the suspension, that will be reported to the State Bar too, but it's not as egregious as having a $25,000 sanction that the State Bar is going to interpret as an incredible amount of malfeasance when malfeasance I don't think was demonstrated here. Poor judgement, definitely. Irresponsible behavior, definitely. And I take full responsibility and I never want to be that person again.

The court then heard from the United States Trustee, the chapter 13 trustee, and debtor's counsel. In relevant part, the first two complained that Rodriguez had not responded to the May Show Cause Order in writing or submitted any evidence to help develop the record. They questioned whether and how the court could "balance" the written testimony debtor submitted against Rodriguez's oral argument—which was not given under

12

oath. In response, the court indicated that it did not consider Rodriguez's remarks to be evidence.

After hearing from the other parties, the court gave Rodriguez an additional opportunity to speak. She pointed out that her May declaration addressed some of the allegations and concerns that had been raised. She then reiterated that she did not respond to the May Show Cause Order in part because she did not want the court to believe she was making excuses for her conduct. Again, at no point during this hearing did Rodriguez indicate that she needed more time to respond or that an evidentiary hearing was necessary.

The court then indicated that it was taking the matter under submission and that it hoped to issue a written decision on or before September 9, 2025, on which date it set a continued hearing as a holding date for the matter.[4] By the time of the September 9, 2025 continued hearing, the court had not yet issued its decision on the May Show Cause Order, so the court announced its intention to continue the hearing to September 24, 2025, again as a holding date. Despite the issuance of a

---

[4] At the conclusion of the hearing, Rodriguez expressed the desire to file a declaration from her employee Carmen Lopez, who Rodriguez claimed could attest that the power of attorney language was in fact there with debtor's signatures on the page debtor signed. The court did not address or comment on Rodriguez's statement. On September 8, 2025, the day before the continued hearing on the May Show Cause Order, Lopez did submit a brief declaration, but it said nothing about the circumstances relating to the power of attorney language or debtor's provision of signatures to Rodriguez in December 2024.

13

tentative ruling indicating that the matter would be continued and that no appearances were required, Rodriguez appeared and stated that she now desired to present testimony in response to the May Show Cause Order. She did not explain whose testimony she sought to present, what they would say, or why the request had not been made earlier. In response, the court indicated that the record already was closed and denied Rodriguez's request.

## D.    The court's final decision.

On September 19, 2025, the court entered its 23-page decision. After reviewing in detail the procedural history of the two bankruptcies, the positions taken by the parties, and the argument and evidence submitted, the court found that Rodriguez was an officer of the court who had engaged in "a series of forgeries, misstatements, and fraud." This included her failure to disclose her advance receipt from debtor of $2,500 in attorney compensation and her forgery of debtor's signature on the multiple case commencement documents she filed without debtor's advance review or authorization to do so.[5]

As to the alleged fabrication of the so-called power of attorney, the court found that Rodriguez added the power of attorney language after debtor provided her signatures to Rodriguez, without debtor's knowledge

---

[5] The court further found that these documents contained multiple misstatements, including but not limited to false statements of debtor's current income, current expenses, assets, prior income, and fees debtor had paid to Rodriguez.

14

or consent. The court also held that the power of attorney was defective under California law because it was not dated, signed by the debtor, notarized, or properly witnessed. The court further observed that Rodriguez failed to follow the required procedures for signing under a power of attorney, by failing to signify as part of the signature that she was signing it as debtor's attorney in fact. As the court further remarked, Rodriguez's "process of using images of the Debtor's signature on pleadings that Rodriguez filed on behalf of the Debtor, and which the Debtor never saw, was a means used by Rodriguez to mislead this Court and parties-in-interest."

In making these findings, the court found credible debtor's recounting of events but found Rodriguez not credible. The court invoked not only Rule 9011 but also referred to its authority under Local Rule 9011-3(a), § 105(a), and its inherent powers as additionally supporting its decision.[6] The court also referenced and considered the American Bar Association Standards for Imposing Lawyer Sanctions. It identified the forged power of attorney as an aggravating factor. But it also identified Rodriguez's expressed remorse as a mitigating factor.

After considering all of the above, the court imposed $2,500 in

---

[6] Because Rule 9011 was sufficient by itself to authorize the court to impose the sanctions set forth in its decision, we need not discuss the court's sanctioning authority under its inherent powers or under its Local Rules. Furthermore, Rodriguez's appeal brief fails to mention these additional sanctioning authorities. Accordingly, she has forfeited any argument she might have made arising from them.

15

monetary sanctions, suspended Rodriguez from practice before the bankruptcy court for a period of six months, and ordered her to complete 10 hours of ethics-related continuing legal education. The court provided that after the six-month suspension period, Rodriguez could reapply to practice before the court by following the reinstatement procedures set forth in the court's Sixth Amended General Order 96-05, or as subsequently amended.[7]

Rodriguez timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157. We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.     Did the bankruptcy court commit reversible error given the process it employed to determine that Rodriguez violated Rule 9011 and sanction her for those violations?

2.     Did the bankruptcy court abuse its discretion when it sanctioned Rodriguez?

## STANDARDS OF REVIEW

We review Rodriguez's due process arguments de novo. *In re Nguyen*, 447 B.R. 268, 276 (9th Cir. BAP 2011) (en banc) (citing *Miller v. Cardinale (In re DeVille)*, 280 B.R. 483, 492 (9th Cir. BAP 2002), *aff'd*, 361 F.3d

---

[7] The current version of the General Order's reinstatement provisions is set forth as Appendix 1 to this decision.

539 (9th Cir. 2004)). But we review all other aspects of the bankruptcy court's sanctions decision for an abuse of discretion. *Shalaby v. Mansdorf (In re Nakhuda)*, 544 B.R. 886, 898 (9th Cir. BAP 2016), *aff'd*, 703 F. App'x 621 (9th Cir. 2017).

The bankruptcy court abuses its discretion if it applies an incorrect legal rule or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

In imposing sanctions against Rodriguez, the bankruptcy court principally relied on Rule 9011. A bankruptcy court "can award an appropriate sanction on its own initiative under Rule 9011 if it first issues an order to show cause describing the specific misconduct." *McCandless v. U.S. Tr. (In re Carrera)*, 2016 WL 4400652, at *6 (9th Cir. BAP Aug. 16, 2016), *aff'd sub nom.*, *Vizconde v. Burchard (In re Vizconde)*, 715 F. App'x 630 (9th Cir. 2017); *see also* Rule 9011(c)(3) ("On its own, the court may enter an order describing the specific conduct that appears to violate (b) and directing an attorney, law firm, or party to show cause why it has not violated (b)."). If the bankruptcy court determines that in filing a bankruptcy petition Rule 9011(b) has been violated, the court may impose both monetary and non-monetary sanctions against the attorney who filed the petition. *In re Carrera,* 2016 WL 4400652, at *6 (citing Rule 9011(c)). However, any sanction imposed under Rule 9011 "must be limited to what

17

suffices to deter repetition of the conduct or deter comparable conduct by others similarly situated." Rule 9011(c)(4)(A).

Most of Rodriguez's appeal focuses on the process the bankruptcy court followed before sanctioning her for violating Rule 9011. For instance, she contends that the bankruptcy court should have scheduled an evidentiary hearing so she could refute debtor's allegations. She similarly asserts that she never was given any opportunity to present evidence proving that the power of attorney was not a forgery and fraud on the court. Along the same lines, she claims that the court committed reversible error by not notifying her in advance that it was considering suspending her from practice before the bankruptcy court. More broadly, she complains that the court should have employed criminal contempt procedures. She additionally faults the bankruptcy court for not complying with its own procedures governing disciplinary matters assigned to a disciplinary panel convened under the court's Sixth Amended General Order 96-05 (last amended Dec. 18, 2019) ("Local Disciplinary Procedures"). None of these arguments have any merit, as we explain below.

## A.    The court was not required to hold an evidentiary hearing.

The May Show Cause Order initiated a contested matter regarding whether Rodriguez should be sanctioned under Rule 9011. *See* Advisory Committee Notes accompanying Rule 9014 ("Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court,

the litigation to resolve that dispute is a contested matter."); *see also Massis v. Gavin (In re Gavin)*, 2022 WL 768144, at *9 (9th Cir. BAP Mar. 14, 2022) (noting that Rule 9011 proceedings are contested matters). Evidentiary hearings generally are necessary in contested matters, but only if the matter cannot be resolved without deciding disputed material factual issues. *Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012) (citing Rule 9014(d) and accompanying Advisory Committee Notes). As stated in *Caviata Attached Homes*, when the controlling facts are undisputed, the bankruptcy court may dispense with the evidentiary hearing requirement and may resolve the matter "on the pleadings and arguments of the parties, drawing necessary inferences from the record." *Id.* at 45-46 (citation modified) (citing *Tyner v. Nicholson (In re Nicholson)*, 435 B.R. 622, 636 (9th Cir. BAP 2010), *partially abrogated on other grounds by Law v. Siegel*, 571 U.S. 415, 423-26 (2014)).

Rodriguez did not file anything in response to the May Show Cause Order. Nor did she file a reply to debtor's response to that order. The court not only gave her an opportunity to do so, it *ordered* her to do. The transcript from the July 15, 2025 hearing included her admission that she affirmatively chose to ignore the requirements of the May Show Cause Order. She did not claim that she needed more time. Nor did she claim at this hearing that the court needed to hold an evidentiary hearing. Instead, she represented that she chose not to respond largely because she did not

19

want to exacerbate any perception that she was being obstinate in maintaining that her conduct was justified. Rather, at the hearing on the May Show Cause Order, she expressly conceded that her conduct was unjustified, inexcusable, and deserving of sanctions. Given Rodriguez's failure to respond as ordered and her admissions at the July 15 hearing, the court was entitled to conclude that there was no genuine dispute of material fact that needed to be resolved by evidentiary hearing.

We are aware that Rodriguez made some comments and offered some arguments at the July 15, 2025 hearing indicating that she disagreed with debtor's allegations that: (1) debtor never authorized Rodriguez to file the petition and related papers; and (2) Rodriguez forged the power of attorney. But the arguments and unsworn statements of counsel are not evidence and cannot be used to establish the existence of genuine issues of material fact. *Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002); *see also U.S. Bank, N.A. v. Vu (In re Vu),* 2012 WL 1521635, at *8 (9th Cir. BAP May 1, 2012) (stating that "arguments and statements of counsel are not evidence." (citation modified)).[8]

Furthermore, the record indicates that Rodriguez had significant experience practicing law in the bankruptcy court. We thus presume her familiarity with the court's Local Rules governing contested matters and

---

[8] For a list of additional cases standing for the same proposition, *see* HON. BARRY RUSSELL, BANKRUPTCY EVIDENCE MANUAL, § 101:1 (2025 ed.) (subsection 9, entitled "Statements of counsel are not evidence" & subsection 10, entitled "Argument is not evidence").

motions practice, which requires both oppositions and replies to be accompanied by supporting evidence. *See* Local Rule 9013(f), (g). The court provided Rodriguez the opportunity to present evidence in response to the May Show Cause Order. She chose not to do so. Under these circumstances, there was no genuine dispute as to any material facts. Accordingly, the court did not need to schedule and hold an evidentiary hearing to dispose of the Rule 9011 proceedings.

**B.** **The court's decision to consider suspension as an alternate sanction did not necessitate additional notice or opportunity to respond.**

Rodriguez claims on appeal that her due process rights were violated and that the Rule 9011 proceeding should have followed criminal process and procedure. We disagree on both counts. Rodriguez ties both of these arguments to the court's decision to suspend her from practice in the bankruptcy court for six months. According to her, she never had an opportunity to respond in writing or to argue at a hearing regarding the propriety of suspension as a sanction or to provide input regarding the length of suspension that should be imposed. She admits that she was the one who suggested suspension as an alternative sanction in lieu of the $25,000 monetary sanction the court referenced in its May Show Cause Order. Also, she has failed to explain why she could not or did not address the length of the suspension when she urged the court to consider it. Finally, she claims that her entitlement to practice law is such a significant right—and her suspension from practice before the court is such a serious

21

sanction—that only the most robust of procedures would have sufficed to afford her due process—something akin to criminal proceedings.

Rodriguez is mistaken. The Ninth Circuit Court of Appeals already has expressly rejected the criminal procedure argument in *In re DeVille*, 361 F.3d at 551-53. In *DeVille*, the Ninth Circuit specifically held that the imposition of penalties under Rule 9011 does not require criminal proceedings. *Id.*; *see also In re Nakhuda*, 544 B.R. at 899 (holding that when sua sponte imposing Rule 9011 sanctions, it suffices for the court to provide notice and a reasonable opportunity to be heard). This process comports with the Bankruptcy Rules. *See* Rule 9014(a) (requiring "[r]easonable notice and an opportunity to be heard" in contested matters).

In bankruptcy cases, adequate notice and opportunity for hearing are flexible concepts that depend on the circumstances of the particular case. *See* § 102(1)(A).[9] This flexible approach dovetails with the constitutional requirement of procedural due process:

> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance.

---

[9] This section in relevant part provides that phrases in the Code like "'after notice and a hearing" mean such notice as is appropriate under the circumstances and such opportunity for hearing as is appropriate under the circumstances.

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). Put differently, notice is constitutionally sufficient as long as it apprises the interested parties of the pending matter and affords them a reasonable opportunity to present their position. *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1202 (9th Cir. 2008) (citing *Mullane*, 339 U.S. at 314), *aff'd*, 559 U.S. 260 (2010).

For purposes of this appeal we need not decide when, if ever, a switch from a proposed monetary sanction to a potential suspension from legal practice might necessitate supplemental or additional notice and opportunity for hearing to satisfy due process concerns. When, as here, the party charged with violating Rule 9011 *affirmatively proposes and advocates* for the change in proposed sanctions during the course of the proceeding, they cannot credibly or legitimately claim they have been denied procedural due process. The court provided Rodriguez with notice and an opportunity to be heard. Though she chose not to respond in writing as ordered, the court still let her argue at the hearing on the May Show Cause Order, and she urged the court to consider a different type of sanction from that proposed in the show cause order. Rodriguez cannot now complain that the court did so.

Appellee United States Trustee asserts that the doctrines of waiver and invited error both should be applied against Rodriguez. *See generally Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024) (describing waiver doctrine); *Hunter v. U.S. Dep't of Educ.*, 115 F.4th 955, 963-64 (9th Cir. 2024)

23

(describing invited error doctrine). It also occurs to us that judicial estoppel arguably might be invoked to bar Rodriguez from challenging her suspension on appeal. *See generally Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001) (describing considerations that typically inform the decision to apply judicial estoppel). But we need not put such a fine point on our reasons for rejecting Rodriguez's due process argument. It suffices for us to say that under the flexible approach taken to due process issues, the circumstances surrounding the court's change in sanctions establish that Rodriguez was not entitled to additional notice and opportunity for hearing—to address the sanction of suspension—once the court decided to consider this sanction at Rodriguez's urging.

## C. Rodriguez's other arguments either lack merit or are insufficiently developed for us to meaningfully address.

Rodriguez also asserts that the bankruptcy court should have followed the procedures set forth in its Local Disciplinary Procedures. But the disciplinary procedures set forth in Sixth Amended General Order 96-05 patently do not supersede or bar the availability of Rule 9011 proceedings. *See* Local Disciplinary Procedures at 1:22-23 ("Nothing in this general order is intended to limit or restrict the authority of any judge to impose sanctions on any attorney in any case or cases assigned to that judge."); *see also In re Nguyen*, 447 B.R. at 281 (recognizing that disciplinary proceedings pursuant to local rule and disciplinary proceedings under another sanctioning authority were not mutually exclusive). In any event,

24

Rodriguez again incongruously attempts to challenge the procedures leading up to her suspension when she instigated and advocated for the bankruptcy court's consideration of suspension as a sanction. *See Hunter*, 115 F.4th at 964 (stating that invited error doctrine "applies where a party introduced, or directly set in motion, the error of which he complains" (citation modified)).

Rodriguez further complains that her six-month suspension is effectively a permanent suspension because she is required to apply for readmission, which may be denied. Aplt. Opn. Br. at p. 10. This argument is incomprehensible; she fails to develop it to a point we can meaningfully review whatever issue she is attempting to raise. Nor did she cite any legal authority in support of her position. Furthermore, her concerns seem conjectural, hypothetical, and unripe. *See generally Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) (explaining relationship between constitutional standing issues and ripeness doctrine).

Rodriguez also mentions in passing that she "expressed to the court her inability to defend herself because of the attorney client privilege." This statement by itself is legally insufficient to perfect for appeal any argument regarding the impact of the attorney-client privilege on her. *See generally In re Nguyen*, 447 B.R. at 278-79 (considering and rejecting similar argument because the appellant failed to establish how the privilege interfered with his ability to fully respond to the Rule 9011 proceedings).

Finally, Rodriguez baldly states that she was authorized to file the

bankruptcy on debtor's behalf "because the debtor signed both a handwritten petition (later typed) and a separate power of attorney." Again, this is not sufficient to perfect for appeal any such issues. When the appellant fails to specifically and distinctly make an argument in her appeal brief, we routinely consider the argument forfeited. *See, e.g., Kurtin v. Ehrenberg (In re Elieff)*, 637 B.R. 612, 621 n.7 (9th Cir. BAP 2022) (citing *Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487–88 (9th Cir. 2010)), *aff'd*, 2023 WL 2203564 (9th Cir. Feb. 24, 2023).

In sum, we reject these miscellaneous arguments as meritless or insufficiently developed to warrant our review.

## CONCLUSION

For the reasons set forth above, we AFFIRM.

APPENDIX-1: REINSTATEMENT PROVISIONS FROM THE BANKRUPTCY COURT'S GENERAL ORDER 96-05, AS LAST AMENDED ON DECEMBER 18, 2019

An attorney whose privileges have been revoked, modified, or suspended under this general order may apply to the Chief Judge of this court for reinstatement of privileges on the following schedule:

(A) If privileges were revoked without condition for an unlimited period of time, the attorney may apply for reinstatement after five years from the date the Discipline Order becomes final;

(B) If privileges were revoked or suspended with specified conditions precedent to reinstatement, the attorney may apply for reinstatement upon fulfillment of the conditions set forth in the Discipline Order; and

(C) If privileges were suspended for a specified period of time, the attorney may apply for reinstatement at the conclusion of the period of suspension or five years after the Discipline Order becomes final, whichever first occurs.

An Application for Reinstatement of Privileges must include a copy of the Discipline Order, proof that all conditions justifying reinstatement have been fulfilled, and proof that the applicant is in good standing before the United States District Court for the Central District of California and is a member in good standing of the State Bar of California. If the attorney's privileges were revoked, or if the suspension was for a time in excess of

five years and was without any conditions precedent to reinstatement, it shall be within the sole discretion of the Chief Judge whether to issue a reinstatement order. If the Chief Judge determines that the attorney is entitled to reinstatement of practice privileges, he or she may issue a Reinstatement Order. Upon entry of the Reinstatement Order, the attorney affected thereby shall be deemed eligible to practice before all the judges of this court except to the extent any judge of this court has issued an order, other than under this rule, denying that attorney the right to appear before that judge or to appear in a particular case.

Upon entry, the clerk shall transmit a copy to all judges of this court and to the attorney, the clerk of the District Court, and to the United States Trustee. In addition, if the Discipline Order was sent to the State Bar or published, the Clerk shall transmit the Reinstatement Order to the State Bar and publish it in the same publication, if possible. If the Chief Judge does not grant the Application for Reinstatement of Privileges, he or she shall issue an order denying the application together with a separate written statement of the reasons for his or her decision. That order will become final 14 days after entry.

If an attorney's Application for Reinstatement of Privileges is denied, he or she may reapply for reinstatement after one year from the date of entry of the order denying the previous application or within such other time or upon fulfillment of such conditions as may be set forth in the order denying reinstatement.